May it please the Court, Your Honors. My name is Matthew Sherb of Winston & Strawn, representing plaintiff and appellant Michael Otis Thomas. And this case concerns the deprivation by California State Prison officials of Mr. Thomas' right to Jumu'ah services, communal Muslim prayer services. And in this case, there was him ---- You said a right to group prayer services? Where do we find that? Well, this is a First Amendment case. We're talking about Mr. Thomas' right to freely exercise his religious beliefs. Several courts, including the Ninth Circuit, have recognized that Jumu'ah is the kind of prayer service, the kind of religious obligation, the deprivation of which would be a substantial burden to Mr. Thomas. What do we do with the imam's affidavit that says that group worship is not a tenet of the religion, that all he has to do is to save the doer, and he can do that alone in his cell? I think, Your Honor, that there are a couple things to say about that. First off, there is evidence that Mr. Saafir previously to signing that declaration actually said that the prayer was an obligation. We also have Mr. Thomas' own evidence that was part of his verified complaint in which he says that the prayer is compulsory, that it's an obligation for him to perform. It's a sincerely held belief of his. And here we're talking about a case that was decided on summary judgment, and we have some questionable evidence from Mr. Saafir that it seems that he contradicted himself and said two different things at two different times. Plus, we have the statements of the plaintiff in the case, and at the very least that should create a fact issue on summary judgment. Well, we've got a couple hurdles we need to get over first before we get that far. I guess the first question is, he has now been transferred to, is it Calpintria? I'm not sure. Sentinella, Your Honor. Sentinella, to a different state prison. So that moves the injunctive claim, does it not, for release? Yes, Your Honor. Okay. So now we're talking purely money damages. That's correct. And the money damages issue is an interesting one. As Your Honor is well aware, there is a circuit split on the issue of whether money damages should be available in an Arlawipa case. However, there are a couple things that need to be said. Because of the? The sovereign immunity issue. Under the Eleventh Amendment. Under the Eleventh Amendment. So would you address that for me? Because to me, that seems to be dispositive as to whether we need to reach the more difficult question of whether or not group versus individual prayer is what counts under the First Amendment violation. Sure. Although I would like to, with the Court's permission, answer that question, but also state as an initial matter that to address the money damages and the sovereign immunity issue here on appeal would be to do so for the very first time on appeal. It was not raised. But it's a pure question of law, is it not? It is a pure question of law, but it's also an issue that was not briefed before the district court, was not considered by the district court explicitly. And so the Court here could use its discretion to consider the issue, but it would do so without the benefit of a record below. Well, but if it's a pure issue of law, what record do we need? It was raised by the State, and it's brief, and you responded to it. So we know what the legal authorities are. What's your argument? So the argument for allowing monetary damages and for embracing the Eleventh Circuit decision in Smith is as follows. Appropriate relief, as the Smith Court noted, is a broader term than simply equitable relief or injunctive relief, and at first blush seems to be able to include broader this concept of monetary damages. This is consistent with section 42 U.S.C. section 2000 CC-3, subsection G, which talks about the broad scope of Arloipa and says that the law is intended to give the broadest possible effect available under the Constitution to this statute, which is intended to bolster support, bolster enforcement of the First Amendment's free exercise clause. It was specifically enacted to replace RFRA, and then to ref – and RFRA, of course, was enacted to overturn the Supreme Court's decision in Smith, where the Court was unwilling to go and give strict scrutiny to laws that were occasionally neutral. Very often the Supreme Court has the last word on these things. How do you deal with Olón? Didn't that involve the very same communal service that's potentially at issue here? It did, Your Honor, but it addressed it under the – in the context of the First Amendment claim. And there are a couple of things. I mean, it's not – it wasn't an Arloipa case, so it wasn't dealing with the strict scrutiny standard that Arloipa would provide. And it was also dealing with a slightly different context, because here in this case, and this is one of the reasons why we were arguing for strict scrutiny under the First Amendment as opposed to Turner, is that there's not a regulation here that – that's challenged. The issue here is not the – it's not a problem with the regulation, with penological interest being served. It's that California has a regulation and issued a ruling on the complaint in this case in the administrative process that said, Mr. Thomas, you're entitled to have an inmate-appointed spiritual leader, and never followed through on that. Mr. Sherb, can we get back to the Eleventh Amendment issue? You're wandering a little far afield. Sure. Well, I asked him the question. Okay. Then I'll blame my colleague. Okay. My apologies, Your Honor. No, no. Finish answering his question and then get back to mine. I think I'll – I think I've answered the question there. I'm happy to go back to it later. But I'll return to the Eleventh Amendment issue now. So we have this subsection G that talks about this broad purpose. And you look at this in tandem with Section 1983, and you see that if we already have a First Amendment protection under Section 1983 where a prisoner can come and sue and get monetary damages, it doesn't seem to make a lot of sense to then have a statute whose sole purpose, as this Court acknowledged in Green, was to sort of go beyond what's already available in the First Amendment and yet have that statute more severely limit the remedies. It would seem to be that you'd want to have, or that Congress' intent would be in this case, to have a statute that in fact gave the same or similar or perhaps even greater remedies under Arloepa because the intent was to go beyond Section 1983. And we have to read all of that into the statutory language, appropriate remedies? Well, I think it's not just – Is that right? Is that what I'm looking at? No, Your Honor, because I think the section that I just cited, 42 U.S.C. 2000 CC-3 subsection G, talks about this broader – this breadth that Congress intended for the statute. And there are a couple other points I'd like to make on the Eleventh Amendment issue. Excuse me. I had one question with regard to that. Could there be damages against the individuals in their individual capacity? Yes, Judge Hugg. That is correct. That's an issue that I don't believe the government has addressed yet. But there are a number of cases, even within this – within this circuit, there's a case, I believe, from the Eastern District of California that awarded damages to prisoners who were – sorry, awarded damages to prisoners who were suing government officials in their individual capacities. I don't believe it's an issue that this circuit court has addressed yet. But it is possible that individual damages are available. And the reason for that – Based on the record in this case, who is the only one who has the authority to address the religious and spiritual needs issue at the institution? Well, Your Honor, I think there's – there are two responses to that. One is there's – there's a fact issue as to whether the named defendants had the sufficient authority. Mr. Thomas submitted evidence in terms of these forms that showed Mr. Saphir signing and authorizing certain religious activities. And then there would be a blank on the form for Mr. Ponder to sign and approve them. So there's some fact dispute as to whether the parties here actually had the authority to act and were the proper defendants. In addition to that – Is that sufficient to put the fact in issue? We have declarations from Ponder and Saphir which affirmatively declare that they do not have the authority, and they cite to the regulations that say it's the head of the institution, that only the warden can do that. And you're arguing that because there's a form that has a blank on it that Captain Ponder didn't sign, that's sufficient to create a contested issue of material fact, authority? I think that – that combined with the statements in their same declarations where they talk about the process, where they say, yes, Mr. Saphir would do this, and then I would look at this form and – and sign off on it, I think it does create a factual issue. But – but more so, Mr. Thomas in this case named a plethora of go-defendants and – and was looking for the opportunity to name the correct person as well. I mean, he was operating pro se, doing this by himself. He named the people he knew who were involved and was looking for the opportunity to name additional individuals, be it the institution head, the warden, whoever it turned out during discovery was the proper person to name. And I think at the very least, he deserves the chance on remand to name the proper parties if this Court believes that he has not named them now. Well, I wanted to get quickly back to Judge Hugg's question about individual capacity suits and just mention that in the section authorizing rights of action under this – under this section, there's a definition for government. And government is defined not only as individual – not only as the government itself and its agencies, but also any person acting under the color of law, just as it's defined in Section 1983, which would tend to indicate the availability of individual capacity suits. And there's one other point I'd like to make on the monetary damages issue for official capacity suits, as we were talking about just earlier, and that is that there are several cases that deal with this concept of nominal damages. And the Fourth and Fifth Circuit cases that have addressed this issue and have found that there's been no waiver of sovereign immunity haven't dealt with the concept of nominal damages. There are several district courts in several of them. This is in your brief, isn't it? This is not, Your Honor. This is – Well, the reason I ask is I think the light in front of you is red. Oh, I'm very sorry, Your Honor. We'll give you a little time for a rebuttal, but you're over your time. Thank you. Thank you for your counsel. Mr. McDonough. Thank you, Your Honor. May it please the Court, my name is Tim McDonough, and I'm here on behalf of defendants appellees in this case, who are two correctional officers, Captain Ponder and Sergeant Kircher, and a former prison chaplain, Iman Sefer, who also happened to be the plaintiff's Iman while he was at Salinas Valley State Prison. As an initial point I would make that I believe the Court understands, obviously, is that injunctive relief was dismissed by the district court, and the appellants have not raised that as an issue at all. I didn't hear him challenge it. I think the sole issue now is damages. The sole issue, Your Honor, is whether or not money damages should be offered to a plaintiff who is an inmate who has, for missing potentially Juma services, in which the prison did everything they could to find a chaplain, and a Muslim chaplain at that, to run the services. While there are many issues in this case, I would address the following three issues. First, that the district court properly applied a reasonableness test to the plaintiff's First Amendment claim, and correctly found that the prison policies met that standard. Second, that there are various ways that this court can affirm the district court's decision, including finding that these individual defendants are not responsible for the plaintiff's complaints regarding attending Juma services. And three, although the court below never addressed the issue, defendants' responsibilities should be granted qualified immunity in this case, unless, of course, the court determines that there are no money damages against individual defendants. Your opposing counsel argues that Olón was a First Amendment case and not under Ralupa. What's your response? That's correct. It was prior to the enactment of Ralupa. But I take it your argument is that it's instructive on the general issue. So tell us how. It is instructive on the issue with regard to the First Amendment claim, in that, contrary to the appellant's argument, the proper standard for judging a prison regulation is a reasonableness standard. And essentially that was set out in Turner v. Safely, pointing out that in the prison setting, a regulation is upheld as constitutional if it's reasonably related to a legitimate penological interest. Now, Olón contains the holding that in that case, the First Amendment case, that it's not enough to say that you were deprived of a particular religious practice. You have to establish that you were totally denied, for lack of a better expression, to be able to exercise your faith. And in that instance, the Court found that simply saying you can't have communal services but you can have other kinds of services meets First Amendment muster. Why should we apply that over to a Ralupa case? Your Honor, I don't believe the standard is different in a Ralupa case. The standard in Ralupa is a much higher standard than in the First Amendment case. For that reason, I think that it's clear in the record that the defendants should get summary judgment on the First Amendment claim. With regards to Ralupa, they also should get summary judgment because the plaintiff has failed to meet his burden of proving that there was a substantial burden caused by the government of his religious exercise. And in support of that, the defendants and appellees have submitted declarations of which most of the defendants' evidence is uncontested and undisputed. Certainly with regards to Iman Sefer, explained that much like people on the outside, the going to Juma is perhaps the preferred manner of which to perform the Dürr prayer. It is not the only manner, and that people who have obligations on the outside like work or other things, other obligations, may simply perform the Dürr prayer and meet their obligations, and do it alone, without a group, and that will not incur any religious penalty. It's not considered a sin. And in fact, he even goes to the point to say it's encouraged to pray in this manner. So it's without the government does not even have to prove at this stage that there was a compelling state interest, which there certainly was in this case, due to the prison setting and the fact that this was a level four facility, or we don't have to get to the stage to say that this compelling interest was purported in the least restrictive manner, that because the plaintiff has not proven his substantial burden. In response to this, the individual defendants in this case, I think it is a way that this court can affirm the district court's opinion without necessarily taking a stance on some of the other issues that it may not want to at this time, such as money damages under RLUIPA or other matters. And that is that these individual defendants, it's undisputed, were not responsible for plaintiff's alleged violations. First of all, you had Iman Safar. He provided Juma services for the plaintiff and other Muslim inmates in Salinas Valley, and there were four yards that he attended to. Juma services occur at a certain time. It is shortly after the zenith of the sun on Friday, and that's when you do the Dürer prayer. Iman Safar could only be on one yard at a time, obviously. And as such, he could only give Juma services to one yard on each Friday. So he, doing the reasonable thing, would alternate, would go from A, B, C, and D yards through a month, would end up providing Juma services one Friday a month to the inmates on yard C, of which the plaintiff was a member of yard C. Iman Safar also had office hours that were actually on yard C, the plaintiff's yard, Tuesday through Saturday, 7 a.m. to 3 p.m., in which he could counsel Muslim inmates, discuss the faith, and talk about the Muslim religion. This is undisputed. He also taught a class on Islam each week on each facility, so the plaintiff had the opportunity to attend the class. What's also significant, although it wasn't his responsibility, defendant Safar informally attempted to find other religious leaders and volunteers to come to the prison to lead Juma services, but could not find any qualified volunteers. He looked, according to his declaration, in Monterey, San Francisco, Oakland, throughout California. As such, there was no one else to come in and do the Juma services. And certainly I would suggest that the Iman has done far more than he needs to, and certainly did not burden the plaintiff's exercise of religion in any way. With regards to Captain Ponder, his involvement in this case appears to be responding to the inmate appeal in which the plaintiff filed against his Iman, Iman Safar, complaining that Iman Safar was not holding Juma services on facility C. The appeal was decided at the second level by an associate warden. The associate warden made the decision regarding that second level appeal and signed off on that. The appellants discuss forms that are – that they suggest somehow create authority. Your Honor, I see my time is short. If I could just briefly finish this point and then sum up. Sure. These forms – the form he talks about that potentially seems to suggest an inmate can be appointed doesn't have Ponder's name on it at all, and there's no evidence that that line was for Ponder or Kircher or anyone else. The regulations clearly state that the institution head is the only person who can designate an inmate. None of the defendants were the institution head. As such, these – none of these defendants can be directly related or directly connected to the deprivations that the plaintiff alleges. Just in closing, I would encourage the Court to look at that individual damages under a LUPA are not appropriate in any way, especially considering that this – the LUPA is contingent on the spending clause in which essentially is a contract between the federal government and the state government. And the language in the statute even says that an appropriate remedy is against a government. And as such, it does not make sense for fairness to ask that Iman Zafar in such a situation have to pay money, money damages, to a plaintiff, an inmate on level C or fourth level inmate at Salinas Valley State Prison where he did a lot for him with regards to his faith. I would just ask that the Court affirm the decision of the district court. Thank you. Roberts. Okay. Thank you for your argument. We'll give you a minute for rebuttal. And that's one minute. Yes, Your Honor. So very quickly, I'll try and make these three points. First, that there is a commerce clause underpinning as well as a spending clause underpinning to our LUPA. Second, it seemed like counsel spent much of his time weighing facts. There was no answer filed in this case. There was an error of the district court in ignoring the verified complaint, very little discovery. Basically, it seems straight to someone's judgment. And it seems like there truly are factual issues here that are at dispute. A lot of the evidence has been, in terms of the penological interest, about the security level of the prisoners and all of that, but no evidence about the shortage of guards or the hardship of providing a once-a-week service. And then to get back very quickly to the monetary damages and sovereign immunity issue, I was about to start to talk when I last finished about nominal damages, how there are several cases that allow them, how they would be appropriate here even if other forms of damages were not available. Because we're trying to vindicate this important interest under our LUPA. It is expressly indicated that there is that important interest. At this point, because prisoners move around a lot, injunctive relief may not be available. Alito, what's your response to the last argument that Mr. Brichtona made about the fact that the RLUPA damages theory has to be tied to the spending clause, and that by definition is government-to-government, and can't by necessity or it's not possible to impose damages on individuals under that theory? That would bear only on the individual capacity issue, not on the official capacity issue. And to the extent it does, there's some ---- No. It would have to go to the theory that by accepting Federal funds to fund the State prison system, the State itself has to waive sovereign immunity, wouldn't it? Yes. It would make the argument that official capacity suits for monetary damages could be appropriate, whereas individual capacity suits may be less appropriate if the power were only tied to the spending clause. But I believe that there is some authority, at least at the district court level, that the RLUPA was enacted pursuant to both the spending clause power and the commerce clause power. Okay. Thank you for your argument, and thanks to Winston and Strachan for taking this case on. Thanks for the State for coming in today. Thank you. The case just argued will be submitted for decision.
judges: Hug, Hawkins, Tallman